N4QKCABP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                          22 CR 437 (KPF)

5   ESTEBAN CABRERA DA CORTE,

6                                        Plea
                Defendant.
7   ------------------------------x

8
                                        New York, N.Y.
9                                       April 26, 2023
                                        11:15 a.m.
10

11  Before:

12              HON. KATHERINE POLK FAILLA,

13                                       District Judge

14                      APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    EMILY SARAH DEININGER
17       Assistant United States Attorney

18  OSCAR RODRIGUEZ SR.
         Attorney for Defendant
19

    Also Present:
20

    Dagoberto Orrantia, Interpreter (Spanish)
21

22

23

24

25

1          (Case called)

2          MS. DEININGER:  Good morning.  Emily Deininger, on

3    behalf of the United States.

4          THE COURT:  Good morning.  Thank you very much.

5          Mr. Rodriguez.

6          MR. RODRIGUEZ:  Good morning, your Honor.  Oscar

7    Rodriguez, on behalf of the defendant, on behalf of

8    Mr. Cabrera Da Corte.  It's a pleasure to be before you, your

9    Honor, and thank you very much for giving me the opportunity to

10   practice before you.

11         THE COURT:  I thank you very much, sir.  I welcomed

12   our virtual conferences.

13         MR. RODRIGUEZ:  Yes, ma'am.

14         THE COURT:  And I welcome this as well.

15         Sir, are there people in the courtroom that you'd like

16   to introduce to me this morning?

17         MR. RODRIGUEZ:  Well, he's accompanied by his friends

18   and his attorney and one -- and his girlfriend.

19         THE COURT:  All right.  Well, they are both welcome.

20         Thank you very much.  You're welcome to be seated.

21         And, Mr. Cabrera Da Corte, good morning to you, sir.

22         THE DEFENDANT:  Good morning, your Honor.

23         THE COURT:  Mr. Cabrera Da Corte, a few things to

24   note:

25         This is a little bit different setting than our prior

discussions, and what I'd like to be sure is that we all are

able to hear you.  From my own experience in this courtroom,

it's sometimes difficult to hear people.  So while folks will

sometimes stand when they're speaking to me, it is completely

acceptable if you remain seated, sir, as long as you stay near

the microphone, because I do want to make sure I can hear you.

Do you understand, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  I also understand that at the moment, you

are obviously fluent in English, and you're very comfortable

with the English language.  We have a standby interpreter if at

any time you would be more comfortable with that interpreter.

Do you understand that, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  So if you would like to use the services

of an interpreter, all you have to do is let me know.

THE DEFENDANT:  Okay.

THE COURT:  All right.  Thank you.

Mr. Rodriguez, do you have a copy of the indictment in

this case, sir?

MR. RODRIGUEZ:  Yes, your Honor.

THE COURT:  Could I ask you to place it in front of

your client, please.

MR. RODRIGUEZ:  One moment, please.  Let me just find

it.

N4QKCABP

1          THE COURT:  Yes, take whatever time you need.

2          Also, sir, I suspect that you have a letter dated

3    February 6th of this year from the U.S. Attorney's Office to

4    you, and if you have a copy of that letter, I'd ask you,

5    please, to also place that in front of your client.

6          MR. RODRIGUEZ:  I have -- thank you very much.

7          Yes, your Honor.

8          (Pause)

9          MR. RODRIGUEZ:  They're both placed before him.

10         THE COURT:  Thank you.  Please give me a moment.

11         (Pause)

12         THE COURT:  Mr. Rodriguez, may I address your client

13   directly?

14         MR. RODRIGUEZ:  Please do, your Honor, of course.

15         THE COURT:  Thank you.

16         Mr. Cabrera Da Corte, in prior proceedings before me,

17   we have discussed the indictment in this case.  In those

18   proceedings, you've indicated your desire to plead not guilty

19   to the charges contained in the indictment.

20         What I understand today, sir, is that you wish to

21   change your plea in part; you wish to enter a plea of guilty to

22   Count One of the indictment in this case, the S1 indictment in

23   this case.

24         Is that your wish today, sir?

25         THE DEFENDANT:  Yes, your Honor.

1      THE COURT:  Mr. Cabrera Da Corte, before I can accept

2 your plea, I need to ask you a series of questions.  What I'd

3 like to do now is to explain to you the purposes that those

4 questions serve.

5      The first thing that I'd like to do is to ensure that

6 you are competent to enter a plea of guilty.  When I use that

7 term, what I mean is that you can see and hear and understand

8 what is going on in this courtroom.

9      If I find that you are competent, I will speak to you

10 about the rights that you have and that you would be waiving by

11 entering a plea of guilty.  I'll speak to you about the charge

12 to which you propose to plead guilty, its elements, and the

13 penalties associated with it.  And I will ask you, finally,

14 sir, some questions to ensure that you're pleading guilty

15 because you're, in fact, guilty of the offense charged in Count

16 One and not for some other reason.

17      Let me please underscore, sir, that it is most

18 important that you understand what is happening.  If any

19 question I ask you is confusing, just let me know.

20      And if at any time you wish to take a break to speak

21 with your attorney, just let me know.

22      Will you do that, sir?

23      THE DEFENDANT:  Yes, your Honor.

24      THE COURT:  Thank you.

25      May we continue?

N4QKCABP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Ms. Noriega, would you please swear in

3     Mr. Cabrera Da Corte.

4          THE DEPUTY CLERK:  Yes, your Honor.

5          (Defendant sworn)

6          THE DEPUTY CLERK:  Please state your full name for the

7     record.

8          THE DEFENDANT:  Esteban Cabrera Da Corte.

9          THE DEPUTY CLERK:  Thank you.  You may be seated.

10          THE COURT:  Mr. Cabrera Da Corte, the significance of

11     my placing you under oath is that if you answer any of the

12     questions that I'm about to ask you falsely, you could be

13     prosecuted for a separate offense that is commonly known as

14     perjury.

15          Do you understand that?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  How old are you, sir?

18          THE DEFENDANT:  I am 26.

19          THE COURT:  How far did you go in school, sir?

20          THE DEFENDANT:  I'm 27.  My birthday was last week.

21          THE COURT:  Okay, 27.  That's fine.  I've had the same

22     thing happen.  It's okay.  Although you're not at an age where

23     you want to start forgetting your age.

24          How far have you gone in school?

25          THE DEFENDANT:  I studied one year English, and next,

N4QKCABP

1    I enter on the college, and I study one year and a half in

2    Gainesville, Florida.

3            THE COURT:  Where did that most recent education take

4    place, sir?

5            THE DEFENDANT:  Can you repeat?  Sorry.

6            THE COURT:  Of course.

7            After you did one year of college and another year of

8    study, was that in the United States or somewhere else?

9            THE DEFENDANT:  It was in Gainesville, Florida, here.

10            MR. RODRIGUEZ:  University of Florida, your Honor.

11            THE COURT:  Yes, sir.  Thank you.

12            MR. RODRIGUEZ:  I'm sorry for interrupting.

13            THE COURT:  Not at all, sir, I told you the acoustics

14    here can be a little suspect at times.  Thank you.

15            MR. RODRIGUEZ:  No problem.

16            THE COURT:  Mr. Cabrera Da Corte, have you ever been

17    treated or hospitalized for any form of mental illness?

18            THE DEFENDANT:  No, your Honor.

19            THE COURT:  Are you now, or have you recently been,

20    under the care of a doctor or a psychiatrist for any condition?

21            THE DEFENDANT:  No, your Honor.

22            THE COURT:  Have you ever been treated or hospitalized

23    for any form of addiction, including drug or alcohol addiction?

24            THE DEFENDANT:  No, your Honor.

25            THE COURT:  In the past two days, have you taken any

1    drugs or medicine or pills of any type?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  In the past two days, have you consumed

4    any alcoholic beverages?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  Is your mind clear this morning?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Do you understand what is happening in

9    this courtroom?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Mr. Rodriguez, have you had a sufficient

12   opportunity to discuss this case with your client?

13             MR. RODRIGUEZ:  Yes, your Honor.

14             THE COURT:  Do you believe he understands the rights

15   that he has, and that he would be waiving, if he were to enter

16   a plea of guilty to Count One?

17             MR. RODRIGUEZ:  Yes, your Honor.

18             THE COURT:  Do you believe he understands the nature

19   of these proceedings this morning?

20             MR. RODRIGUEZ:  Yes, your Honor.

21             THE COURT:  If your client wishes to enter a plea of

22   guilty, do you believe him competent to do so?

23             MR. RODRIGUEZ:  Yes, your Honor.

24             THE COURT:  Ms. Deininger, if Mr. Cabrera Da Corte

25   wishes to enter a plea of guilty, do you believe him competent

1    to do so?

2              MS. DEININGER:  Yes, your Honor.

3              THE COURT:  Mr. Cabrera Da Corte, having now spoken

4    with you for a few minutes, and having observed both your

5    answers to my questions and your demeanor here in this

6    courtroom, and having conferred with your attorney and with the

7    attorney for the government, I find that you are fully

8    competent to enter a knowing and informed plea of guilty, if

9    that is what you wish to do.

10             I have asked your attorney to place before you the

11   indictment in this case, and earlier in this case, I've asked

12   you some questions about it, but they're sufficiently

13   important, that I'm going to ask them again.

14             Have you read this document, sir, the indictment?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Have you had a sufficient opportunity to

17   speak with your attorney about the charge to which you intend

18   to plead guilty, which is Count One, and any defenses that you

19   might have to that charge?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Now, I'm going to pause for a moment, sir,

22   and explain to you that, from time to time, I will be asking

23   you questions about communications with your attorney.  When I

24   ask those questions, I don't want you to give me the details of

25   those communications, because they are privileged, but I do

1    need to know that certain topic matters were covered.  So,

2    generally speaking, if I ask a question about your attorney,

3    the answer is usually a yes-or-no answer.

4              Do you understand that, sir?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Has your attorney explained to you the

7    consequences of entering a plea of guilty in this case?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Are you satisfied with his representation

10   of you in this matter?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Sir, what I will do now is speak to you

13   about certain rights that you have and would be waiving by

14   entering a plea of guilty.  Once again, if anything I'm saying

15   is confusing, or if for any reason you'd like to speak with

16   your attorney, please let me know.

17             THE DEFENDANT:  I will.

18             THE COURT:  Thank you, sir.

19             Under the Constitution and laws of the United States,

20   you have the right to continue with your previously entered

21   plea of not guilty to the charges contained in the indictment.

22   Do you understand that, sir?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  If you continued with your previous plea

25   of not guilty, you would be entitled to a speedy and public

1   trial by a jury on the charges contained in the indictment.  Do

2   you understand that, sir?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  At a trial, you would be presumed to be

5   innocent, and the government would be required to prove you

6   guilty by competent evidence beyond a reasonable doubt before

7   you could be found guilty.

8            Do you understand that, sir?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  A jury of 12 people would have to agree

11  unanimously that you were guilty of the offenses charged in the

12  indictment.  You would not have to prove that you were

13  innocent.

14           Do you understand that?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  At a trial, and at every stage of your

17  prosecution, you are entitled to the assistance of an attorney.

18  If, and to the extent, that you could not afford an attorney,

19  one would be appointed for you at public expense, free of cost

20  to you, in order to represent you.

21           Do you understand that, sir?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  If there were a trial in this case, the

24  witnesses for the government would have to come into court and

25  testify in your presence, your attorney could cross-examine the

1    government's witnesses, he could object to the government's

2    evidence, he could offer evidence on your behalf if you wanted

3    him to do so.  You would also have the right to have subpoenas

4    or other documents or process issued in order to compel

5    witnesses to testify in your defense.

6              Do you understand that, sir?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  At a trial, you would have the right to

9    testify if you wanted to do so.  You would also have the right

10   not to testify if you wanted not to do so.  If you chose not to

11   testify, no one, including the jury, could draw any inference

12   or suggestion of guilt from your decision not to testify.

13             Do you understand that, sir?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Another consequence of entering a guilty

16   plea in this particular manner is that you waive, or give up,

17   your right to seek suppression, or exclusion, of the

18   government's evidence against you.

19             Are you aware of that, sir?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Without giving me the details of your

22   communications, have you had a complete opportunity to speak

23   with your attorney about whether there is any basis to seek

24   suppression, or exclusion, of part or all of the government's

25   evidence against you?

1            THE DEFENDANT:  Many times, your Honor.

2            THE COURT:  Thank you, sir.

3            Do you understand that if you were convicted after a

4    trial, you would have the right to appeal from the jury's

5    verdict?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Do you understand that right now, as

8    you're entering this guilty plea, you have the right to change

9    your mind and to continue with your previously entered plea of

10   not guilty in this case?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  If you plead guilty, and if I accept your

13   guilty plea, you will give up your right to trial and the other

14   rights that I've been discussing with you, other than your

15   right to an attorney.  You have the right to an attorney

16   whether you plead guilty or go to trial.  But if you plead

17   guilty, and if I accept your guilty plea, there will be no

18   trial, I will enter a judgment of guilty on Count One of the

19   indictment, I will sentence you at a later date based on

20   information that I obtain from you here today, information that

21   I obtain from the United States Probation Office in a document

22   known as a presentence investigation report, and information

23   that I obtain from you and your attorney and the attorneys for

24   the government in connection with sentencing.

25           If you plead guilty, and if I accept your guilty plea,

1    there would be no appeal on the issue of whether the government

2    could use the evidence that it has against you.  There would

3    also be no appeal on the issue of whether you committed the

4    conduct that you admit to in pleading guilty.

5            Do you understand that, sir?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Another consequence of entering a guilty

8    plea is that there is a degree to which you have to give up

9    your right not to incriminate yourself.  I will be asking you

10   questions later in the proceeding to confirm that you're

11   pleading guilty because you're, in fact, guilty and not for

12   some other reason, and you will have to admit and acknowledge

13   your guilt of the offense charged in Count One.

14           Do you understand that, sir?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Mr. Cabrera Da Corte, do you understand

17   each of the rights I've been discussing with you?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  Would you like me to provide any

20   additional or clarifying information about any of those rights?

21           THE DEFENDANT:  No, your Honor.

22           THE COURT:  Is it your wish today, sir, to give up

23   your right to trial and the other rights that I've been

24   discussing with you, and to enter a plea of guilty to Count One

25   in this case?

1    THE DEFENDANT:  Yes, your Honor.

2    THE COURT:  That count charges you with conspiring, or

3  agreeing, with others to commit wire fraud.  That's in

4  violation of Section 1349 of Title 18 of the United States

5  Code.

6    Do you understand, sir, that that is the count to

7  which you are proposing to plead guilty today?

8    THE DEFENDANT:  Yes, your Honor.

9    THE COURT:  I'd ask you to pay attention, and I will

10  pay attention as well.  I'm going to ask the prosecutor to

11  outline for both of us the elements of this offense.

12    Thank you, Ms. Deininger.

13    MS. DEININGER:  Yes, your Honor.

14    If the government were to proceed to trial on Count

15  One of this offense, it would be required to prove beyond a

16  reasonable doubt:

17    First, that an agreement or understanding to commit

18  wire fraud existed between two or more people;

19    And, second, that the defendant knowingly became a

20  member of the charged conspiracy.

21    The government would also need to prove beyond a

22  preponderance of the evidence that venue was appropriate in the

23  Southern District of New York.

24    The elements of the underlying offense of wire fraud

25  are:

1      First, that the defendant devised or knowingly

2  participated in a scheme to defraud or to obtain money or

3  property by material false or fraudulent pretenses,

4  representations or promises;

5      Second, that the defendant acted with the intent to

6  defraud;

7      And, third, that the scheme was advanced, furthered,

8  or carried out by the transmission of a writing, signal, or

9  sound of some kind by means of a wire in interstate commerce.

10      Would you like me to go on and do a proffer of the

11  evidence, or later?

12      THE COURT:  Not at this time.  Thank you very much.

13      MS. DEININGER:  Thank you.

14      THE COURT:  Mr. Cabrera Da Corte, did you hear the

15  prosecutor just now?

16      THE DEFENDANT:  Yes, your Honor.

17      THE COURT:  You understand, sir, that if you were to

18  decide to go to trial, that would be what the government would

19  have to prove at the trial?

20      THE DEFENDANT:  Yes, your Honor.

21      THE COURT:  What I'd like to do now, sir, is to talk

22  to you about the penalties that are associated with this

23  offense.  I'm going to begin by discussing the maximum

24  penalties that the law permits me to impose.  I'm using the

25  term "maximum" deliberately, sir; it is the most the law

1    permits me to impose.  I don't want to suggest to you that this

2    is necessarily what you're going to receive.  What I want to be

3    sure you understand today is that by entering a plea of guilty,

4    you're exposing yourself to the possibility of receiving any

5    combination of punishments up to the statutory maximum terms

6    that I'm about to describe.

7              Do you understand that, sir?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  I will begin with restrictions, potential

10   restrictions, on your liberty.

11             The maximum term of imprisonment for this offense is

12   20 years' imprisonment.  Do you understand that, sir?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Do you understand, as well, that any term

15   of imprisonment that I impose can be followed by a term of up

16   to three years of supervised release?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Let me speak to you for a moment about

19   supervised release so that we have the same understanding of

20   it.

21             When I use the term, what I mean is a period of time

22   where you would be subject to supervision by the United States

23   Probation Office.  There would be terms and conditions of

24   supervised release that you would have to follow, and if you

25   were unable or unwilling to follow those terms and conditions

1    of supervised release, the possibility exists that you could be

2    sent to prison to serve jail time without a jury trial; your

3    term of supervised release would be revoked.  And if that were

4    to happen, you would not get any credit for any prior term of

5    imprisonment you may have served.  You would also not get any

6    credit for that time that you spent on supervised release in

7    compliance with the terms.

8              Do you understand each of those things, sir?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Please also understand that there is no

11   parole in the federal system.  If you are sentenced to a term

12   of imprisonment, you would not be released early on parole.

13   There is an opportunity to earn credit for good behavior, but

14   you should expect to serve -- actually, let me pause for a

15   moment.

16             There are new credits under the FIRST STEP Act as

17   well, so there are opportunities to earn credits against your

18   sentence, but I tell people generally to expect to serve

19   approximately 85 percent of any term of imprisonment imposed.

20             Do you understand that, sir?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  The Count One offense also has certain

23   financial penalties.  So I'll discuss the potential financial

24   penalties as well.

25             The maximum allowable fine is the greatest of these

1   three things:  $250,000, twice the gross pecuniary gain derived

2   from the offense, or twice the gross pecuniary loss to persons

3   other than yourself.  I can order you to make restitution to

4   any person or entity that has been injured as a result of your

5   conduct.

6       And I understand that in this setting, the parties

7   have agreed to a restitution figure of $3,578,786.69.  And

8   among the penalties, I am also authorized to order you to

9   forfeit any property that you may have derived from the offense

10  or used to commit or to facilitate the commission of the

11  offense, and, in this case, I understand the parties are

12  agreeing to a forfeiture figure of $1,200,000.

13      Then separate and apart from all of those financial

14  penalties, I must order a $100 special assessment per count of

15  conviction.

16      So, Mr. Cabrera Da Corte, do you understand that these

17  potential restrictions on your liberty and these potential

18  financial penalties are the maximum possible penalties that the

19  law permits me to impose?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  I'm going to ask a series of questions

22  now, sir, that I have to ask in all cases.  My experience is

23  that not all of these questions are applicable to all people,

24  so I'll explain why I'm asking them as I do.

25      Are you a United States citizen, sir?

N4QKCABP

1     THE DEFENDANT:  No, your Honor.

2     THE COURT:  Okay.  Of what country are you a citizen?

3     THE DEFENDANT:  From Venezuela.

4     THE COURT:  Venezuela.

5     Do you understand that as a result of this guilty plea

6  today, you might have certain adverse immigration consequences?

7  These could include the possibility of detention by immigration

8  authorities at the completion of your sentence in this case

9  and, as well, the possibility of deportation or removal from

10  the United States.

11     Are you aware of that, sir?

12     THE DEFENDANT:  Yes, your Honor.

13     THE COURT:  And have you had a sufficient opportunity

14  to speak with your attorney about the immigration consequences

15  of this guilty plea?

16     THE DEFENDANT:  Yes, your Honor.

17     THE COURT:  Ms. Deininger, given the most recent

18  responses, I'm not going to review with Mr. Cabrera Da Corte

19  the civil rights that he could be losing, because those, I

20  believe, are only for U.S. citizens.

21     Do you agree?

22     MS. DEININGER:  Yes, I agree.

23     THE COURT:  Okay.  Thank you.

24     Mr. Cabrera Da Corte, these questions that I'm about

25  to ask may seem like trick questions; they are not.

1          Are you right now serving any other sentence?

2          THE DEFENDANT:  No.

3          THE COURT:  At this time, are you aware of any other

4     prosecutions of you or investigations of you?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  Okay.  I'll explain why I'm asking them.

7          Resolving the case before me doesn't necessarily

8     resolve any other matter you may have.  If you have another

9     criminal case, if you have an administrative case, if you have

10    something else going on, resolving my case doesn't necessarily

11    resolve that.  If this is the only case of which you're aware,

12    and we're just going to focus on this case, then we'll go from

13    there.

14         Without giving me the details of your communications,

15    sir, with your attorney, have you and your attorney discussed

16    the process of sentencing?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  And do you understand that at sentencing,

19    the sentencing judge, who I fully expect will be me, will be

20    asked to consider certain sentencing factors that are set forth

21    in a statute, Section 3553(a) of Title 18 of the United States

22    Code, and that I must consider those factors in order to impose

23    an appropriately individualized sentence?

24         Are you aware of that, sir?

25         THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  One of those factors is called the United

2    States Sentencing Guidelines, and sometimes people call it "the

3    guidelines" or "the sentencing guidelines."

4          Are those terms with which you're familiar, sir?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  If I'm using the term "guidelines" or

7    "sentencing guidelines," I am referring to the United States

8    Sentencing Guidelines.  What I want to ensure you understand at

9    this stage, sir, is if anyone has attempted to predict for you

10   what your ultimate sentence may be, their prediction could be

11   incorrect.  Again, as I mentioned, I expect I'll be the judge

12   sentencing you.  I will need to consider information I don't

13   currently have.  Some of that information, you will give to me

14   today.  I will receive some from the probation office in the

15   presentence investigation report, and I will receive even more

16   information in connection with the parties' sentencing

17   submissions, both written and oral.

18         So do you understand, sir, that, today, no one can

19   predict with any confidence what your ultimate sentence will

20   be?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And do you also understand that if your

23   ultimate sentence is different from what anyone may have

24   suggested to you, if it is different from what you expect or

25   hoped for, if it is different from any range contained in any

1    communication you may have received from the government, you

2    would still be bound by your guilty plea?  When I say that,

3    what I mean is, you would not be permitted to withdraw your

4    guilty plea based merely on dissatisfaction with your sentence.

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  You do understand that.  Thank you.

7              Mr. Cabrera Da Corte, I was advised today that you're

8    pleading guilty pursuant to a plea agreement, a written plea

9    agreement, with the government.  Am I correct?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  And I have been given, in preparation for

12   this proceeding, a letter from the United States Attorney's

13   Office for the Southern District of New York to Mr. Rodriguez,

14   dated February 6th of 2023.  It mentions your name and the

15   docket of this case.

16             Do you have a copy of that letter in front of you,

17   sir?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Is this document your written plea

20   agreement with the government?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  I'm marking my copy of this document as

23   Court Exhibit 1, sir.  And at the end of this proceeding, I'm

24   going to give my copy to the government for safekeeping.

25             The last page of the document I have, sir, is page 6.

1  I'm going to hold up my page 6.  I'll let you get to page 6 on

2  your version of the document, as well, if you'd like, but when

3  you're ready, I'd just ask you to look up and tell me if you

4  can see the page that I'm holding up.

5          Can you, sir?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And, specifically, can you see that there

8  are four signatures on this page?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  On the version of the letter that you have

11  in front of you, are there four signatures on the page?

12         MR. RODRIGUEZ:  We have a blank, your Honor.

13         THE COURT:  Okay.  Then let's go with mine.

14         MR. RODRIGUEZ:  But I don't -- that is our -- the copy

15  that I forwarded to Ms. Deininger, and it was forwarded to your

16  chambers.

17         THE COURT:  Okay.  I thank you.  All right.

18         So, Mr. Cabrera Da Corte, you would agree with me that

19  there are four signatures on the version of the document that I

20  have; yes?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Is one of those signatures yours?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Did you sign this document today in the

25  presence of your attorney?

N4QKCABP

1        THE DEFENDANT:  Not today.

2        THE COURT:  Right, because I can't read dates.  Excuse

3   me, let me ask the question differently.

4        Did you sign this document in or about March of 2023?

5        THE DEFENDANT:  Yes, your Honor.

6        THE COURT:  Before you signed this document, did you

7   read it?

8        THE DEFENDANT:  Yes, your Honor, I read with my

9   lawyer.

10        THE COURT:  To the extent you needed to review any

11   provisions of it with your attorney, did you review the

12   agreement with your attorney?

13        THE DEFENDANT:  Yes, your Honor.

14        THE COURT:  At the time you signed this document, did

15   you understand what you were committing to doing in this

16   document?

17        THE DEFENDANT:  Yes, your Honor.

18        THE COURT:  I'm going to speak to you about a few of

19   the provisions just to make sure that you and I have the same

20   understanding of them.

21        You heard me mention this earlier today, sir, but I

22   understand that you are admitting to the forfeiture allegation

23   that is associated with Count One of the indictment, and that

24   you are agreeing to forfeit to the United States a sum of money

25   equal to $1,200,000 in United States currency.

1          Now, I should tell you — I didn't mean to trick you,

2     sir — I'm looking at the first page of your agreement, and it

3     is the last paragraph on the first page — so I'll let you get

4     there — and then just tell me if, in fact, you are agreeing to

5     admit to the forfeiture allegation.

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And you are agreeing to forfeit that

8     figure to the United States, sir?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  I'll ask you, please, to turn to the

11     second page, because I think this works better if you and I are

12     looking at the same thing.  I see that you are there, and I am

13     looking at the first full paragraph on the second page, sir.

14          I understand that you are agreeing to make restitution

15     in the amount of $3,578,786.69 to a supposed victim of this

16     offense.

17          Is that correct, sir?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Okay.

20          On the remainder of this page, and then going over

21     onto the next page, page 3, I understand that what you are

22     doing is you and the government are agreeing that the

23     guidelines apply to your case in a particular manner.

24          Is that your understanding as well, sir?

25          THE DEFENDANT:  Yes, your Honor.

N4QKCABP

1          THE COURT:  So you and the government are agreeing

2    that after reviewing the guidelines, the appropriate range —

3    and it's the range to which you're stipulating — is 78 to 97

4    months' imprisonment.  And I see that in the middle of page 3.

5          Am I correct, sir?

6          What I'm looking at is the first paragraph under the

7    heading "C. Sentencing Range."

8          Do you see that?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Okay.  Let me talk to you for a moment

11    about this.

12          These stipulations are binding on you and on your

13    attorney and on the government.  They're not binding on me

14    because I didn't sign this agreement.  I have an independent

15    obligation to calculate the guidelines, and this is not to say

16    that I'm going to calculate them any differently, but I want to

17    be sure that you understand that I do have that independent

18    obligation.

19          Do you understand that, sir?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  And do you understand that if I correctly

22    calculate the guidelines and come up with a different range,

23    that would not be a basis for you to withdraw your guilty plea?

24    Do you understand that, sir?

25          THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  I'll ask you, please, to turn to page 4 of

2     the agreement, and then just please tell me when you've arrived

3     at page 4.

4          THE DEFENDANT:  I am.

5          THE COURT:  Thank you.

6          I'm looking at the last paragraph on that page.  It

7     begins with the words, "it is agreed."  Do you see that, sir?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  I understand this paragraph to contain

10    waivers.  You and the government are each agreeing to waive

11    certain rights that you have if certain things happen at

12    sentencing.

13          Is that your understanding as well?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  More specifically, sir, what you're

16    agreeing to waive is the right that you would have to file a

17    direct appeal or to file a collateral challenge under

18    Sections 2255 or 2241 of Title 28 of the United States Code.

19    So, you're agreeing to give up your right to appeal or your

20    right to a collateral challenge of certain components of your

21    sentence if certain things happen at sentencing.

22          Am I correct?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Let's talk about the specifics, please.

25          I understand, first, that you're agreeing not to

1    appeal or to bring a collateral challenge to any sentence of

2    imprisonment within or below the stipulated guidelines range of

3    78 to 97 months' imprisonment.  So if I were to impose a term

4    of 97 months' imprisonment or something less than that, you are

5    agreeing not to appeal that piece of your sentence.

6            Is that correct?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  I understand, as well, that you're

9    agreeing not to appeal or to bring a collateral challenge to

10   any term of supervised release that is less than or equal to

11   the statutory maximum term of three years of supervised

12   release.

13           So if I were to impose a term of three years of

14   supervised release or something less than that, you're agreeing

15   not to appeal or to collaterally challenge that piece of your

16   sentence.

17           Is that correct?

18           THE DEFENDANT:  I agree, yes.

19           THE COURT:  I missed that, sir.

20           THE DEFENDANT:  Yes, I agree, your Honor.

21           THE COURT:  Okay.  Thank you, sir.

22           I also understand that you're agreeing not to appeal

23   or to bring a collateral challenge to any fine that is less

24   than or equal to $250,000, any restitution figure that is less

25   than or equal to $3,578,786.69, any forfeiture amount that is

1    less than or equal to $1,200,000, and any special assessment

2    that is less than or equal to $100.

3              Is each of those things correct, sir?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Now I'm going to ask you please to turn to

6    page 5 and tell me when you're at page 5.

7              You are there, sir.  Thank you.

8              There is a paragraph that begins, "the defendant

9    recognizes."  It is in the middle of the page, and it discusses

10   the possible immigration consequences of a guilty plea.

11             Have you reviewed this paragraph, sir?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Okay.

14             Again, just so that I'm sure of it, you've spoken with

15   your attorney about the possible immigration consequences of

16   your plea; is that correct?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Thank you.

19             Ms. Deininger, are there other provisions of this

20   agreement that you would like me to call to

21   Mr. Cabrera Da Corte's attention?

22             MS. DEININGER:  No, your Honor.

23             THE COURT:  And, Mr. Rodriguez, I know I've reviewed

24   many of the paragraphs of this, but if there are some in

25   particular you'd like me to call to your client's attention, I

1  will do so.

2          MR. RODRIGUEZ:  No, your Honor.

3          THE COURT:  Okay.  Thank you.

4          Mr. Cabrera Da Corte, let me then speak to you about a

5  couple of broader questions.

6          This document that you and I have been looking at, I

7  understand this to be the complete agreement that you have with

8  the government.  Am I correct?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  I'm going to ask you the question from the

11  opposite perspective, sir, just to be sure.

12          To the best of your knowledge, has anything been left

13  out of this agreement?

14          THE DEFENDANT:  No, your Honor.

15          THE COURT:  Sir, other than what is contained in this

16  agreement, has anyone made you any promise or offered you any

17  inducement in order to get you to sign the agreement or to

18  plead guilty here today?

19          THE DEFENDANT:  No, your Honor.

20          THE COURT:  Has anyone forced you or threatened you in

21  order to get you to sign the agreement or to plead guilty here

22  today?

23          THE DEFENDANT:  No, your Honor.

24          THE COURT:  Has anyone made any promise to you about

25  the sentence that you will receive?

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  I'd like you now to tell me, in your own

3     words, what it is you did that makes you believe that you are

4     guilty of the offense charged in Count One of the indictment.

5          Let me ask, please, sir, do you have notes to aid you

6     in speaking with me today?  Some people do.  No?  That's fine.

7     If you had, I would have asked you if the notes reflected your

8     thoughts, as distinguished from someone else's.

9          How would you like to proceed?  Would you like me to

10    ask you questions, or is there something that you've prepared

11    that you'd like to say to me this morning?

12          THE DEFENDANT:  You can ask me questions.

13          THE COURT:  Okay.  Let me do that, then.  Excuse me,

14    please.

15          MR. RODRIGUEZ:  Excuse me, your Honor.  This is the

16    unrehearsed part of a plea agreement, every judge does it

17    differently, but we're more than happy to answer all the

18    questions possible.

19          THE COURT:  Of course.

20          And, Mr. Rodriguez, let me give you a moment to opine

21    on this as well.  Each defense attorney has a different way of

22    preparing his or her client.

23          MR. RODRIGUEZ:  Yes, your Honor.

24          THE COURT:  Some have statements that they've

25    discussed with their clients, some prefer that I ask questions.

1          Is there something you were planning on doing --

2          MR. RODRIGUEZ:  Thank you.  I have no objection to

3     anything that you have done so far, and I don't anticipate any

4     objection to anything that you may do.  We are really free and

5     open -- we're trying to correct a wrong here, and he realizes

6     it.  We want to go forward.  He wants to go forward, and he

7     wants to be as sincere as possible.

8          THE COURT:  I appreciate that.  And I thank you, and

9     I'm sure he will be.

10          Mr. Cabrera Da Corte, I'm understanding that the

11     conspiracy in this case took place between the approximate time

12     frame of 2020 and March of 2022.

13          For part or all of that time period, did you have an

14     agreement with other people?

15          THE DEFENDANT:  What do you mean with an agreement,

16     your Honor?

17          THE COURT:  Of course, no, that's fair.

18          The indictment charges a scheme, and the scheme

19     involves deceiving banks and deceiving a cryptocurrency

20     exchange platform into returning funds that were used to

21     purchase more than $4 million in cryptocurrency by falsely

22     claiming that the cryptocurrency purchase transactions were

23     unauthorized.  That's what the scheme that is charged in the

24     indictment is.

25          Do you understand that, sir?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  At some point in the time period I've just

3     outlined, did you agree with others to defraud banks and/or a

4     cryptocurrency exchange platform into having them send you

5     money back?

6          THE DEFENDANT:  Everyone that worked with me at the

7     time, they want -- everyone was agreed with doing this, yeah.

8          THE COURT:  Okay.

9          So that's what the first part of the offense is, is

10    there an agreement.  So there was an agreement; yes, sir?

11         THE DEFENDANT:  Every person, yes.

12         THE COURT:  Okay.

13         And the individuals with whom you had this agreement,

14    they were not law enforcement officers or confidential sources,

15    they were civilians, may I call them that?

16         THE DEFENDANT:  Everyone was civilians, yes.

17         THE COURT:  Okay.

18         So the agreement involved taking actions that might

19    cause banks to give you money back, correct, sir?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  And also taking actions that might cause a

22    cryptocurrency exchange to give you money back; is that also

23    correct?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  The scheme was to lie to these entities

1    about whether the purchase transactions were authorized or not;

2    also yes?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  So at the time that you and others agreed

5    to do that, the intent was to deceive either the bank or the

6    cryptocurrency exchange into giving you back money; is that

7    correct?

8              THE DEFENDANT:  Yes.  The way it was, that we -- the

9    thing was that we withdraw the cryptocurrency.

10              THE COURT:  You withdraw it?

11              THE DEFENDANT:  Yeah, I withdraw it.

12              And next we call the bank.

13              THE COURT:  You all intended to get money back,

14    correct, sir?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Okay.

17              In the course of this scheme that you and the others

18    agreed to, did you use interstate wires, emails, or wire

19    transfers, or ATM transactions, or things of that nature?

20              THE DEFENDANT:  I didn't use any email, but we do a

21    lot of wire transfer and cashier's checks.

22              THE COURT:  All right.  I understand that.

23              Were you located in Florida as this was happening,

24    sir?

25              THE DEFENDANT:  Every time, yeah.

1          THE COURT:  Do you understand whether either the

2     cryptocurrency exchange or the banks were located in this

3     district, in New York?  If you know.

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  I'm going to ask the government to make a

6     proffer for me on the issue of venue.  If the government says

7     to me or explains to me how New York was implicated, you'll let

8     me know if you have any disagreement with their statement.

9          All right, sir?

10          THE DEFENDANT:  All right.

11          THE COURT:  At the time that you engaged in this

12     agreement, between in or about 2020 and 2022, did you

13     understand that what you were doing was wrong and illegal?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Ms. Deininger, may I please have a proffer

16     on the issue of venue.  And if you have a different

17     understanding about how the wires were implicated, you may let

18     me know that as well.  Thank you.

19          MS. DEININGER:  Yes, your Honor.

20          As to venue, as part of the scheme, some money was

21     sent to a cryptocurrency exchange that held its bank account in

22     the Southern District of New York, and also in a few instances,

23     after the fraud proceeds were received, after the money was

24     returned by the banks and the cryptocurrency exchange, it was

25     then transferred between coconspirators, and some of those

1    transfers passed through bank accounts based in the Southern

2    District of New York.

3           On the wire front, I think it involved the interstate

4    wires that I just mentioned, but also interstate telephone

5    calls between the defendant and his coconspirators and the

6    banks that were involved.

7           THE COURT:  All right.  Thank you very much.

8           Mr. Cabrera Da Corte, were you able to hear the

9    prosecutor just now?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Do you have any reason to dispute the

12   factual proffers that she has just made to me regarding the use

13   of the wires and the way in which this scheme may have impacted

14   this district in New York?

15          THE DEFENDANT:  I understand everything, your Honor,

16   yes.

17          THE COURT:  You understand it, you don't dispute it,

18   correct, sir?

19          THE DEFENDANT:  I don't dispute it.

20          THE COURT:  I understand that as well.  Thank you.

21          Mr. Rodriguez, do you know of any valid defense that

22   would prevail at trial or any reason why your client should not

23   be permitted to plead guilty in this case?

24          MR. RODRIGUEZ:  No, your Honor.

25          THE COURT:  Ms. Deininger, are there additional

1    questions that you would like me to ask of

2    Mr. Cabrera Da Corte?

3              MS. DEININGER:  One second, your Honor?

4              THE COURT:  Of course.

5              MS. DEININGER:  No, your Honor, I think we've covered

6    everything.

7              THE COURT:  May I just have from you a brief summary

8    of the types of evidence that would be introduced if there were

9    a trial in this case?

10             MS. DEININGER:  Of course.

11             If the case were to proceed to trial, the government

12   would expect to introduce law enforcement, victim and

13   cooperating witness testimony, text message and chats between

14   the defendant and his coconspirators recovered from cell

15   phones, and bank and cryptocurrency exchange records.

16             THE COURT:  Thank you.

17             Mr. Cabrera Da Corte, did you just hear the prosecutor

18   now?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Do you understand that if you were to

21   decide to go to trial, that would be part or all of the

22   government's evidence at that trial?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Mr. Rodriguez, do you agree that there is

25   a sufficient factual predicate for a guilty plea to Count One

1    of the superseding indictment in this case?

2              MR. RODRIGUEZ:  Yes, your Honor.

3              THE COURT:  If your client wishes to enter a plea of

4    guilty, is there any reason why I should not accept it?

5              MR. RODRIGUEZ:  No, your Honor.

6              THE COURT:  I wasn't trying to trick you there.

7              MR. RODRIGUEZ:  I didn't want to make a mistake, but,

8    no, your Honor, we're --

9              THE COURT:  I know you would not, sir.

10             MR. RODRIGUEZ:  We're clear.  Thank you so much.

11             THE COURT:  Thank you.

12             Ms. Deininger, do you agree there is a sufficient

13   factual predicate for a guilty plea to Count One of the

14   superseding indictment in this case?

15             MS. DEININGER:  Yes, your Honor.

16             THE COURT:  If Mr. Cabrera Da Corte wishes to plead

17   guilty to Count One, is there any reason why I should not

18   accept it?

19             MS. DEININGER:  No.

20             THE COURT:  Now, at this time, Mr. Cabrera Da Corte,

21   do you wish to enter a plea of guilty to Count One of

22   Indictment S1:22 CR 437?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Sir, because you've acknowledged that you

25   are, in fact, guilty as charged in Count One of this

1   indictment, because I'm satisfied that you know of your rights,

2   including your right to proceed to trial, and because I'm

3   satisfied that you're aware of the elements of the offense and

4   the penalties associated with it, I find that you are knowingly

5   and voluntarily pleading guilty.  I will enter a judgment of

6   guilty on Count One of this indictment, and I will accept your

7   guilty plea.

8           The next phase of this case, sir, is that of

9   sentencing.  The probation office will want to interview you in

10  connection with the presentence investigation report to which

11  you heard me refer a little while ago.  I will order that that

12  interview not take place unless your attorney or someone from

13  his office is present virtually or in person with you at that

14  interview.

15          Please understand, sir, that I rely very heavily on

16  the presentence investigation report in determining what is an

17  appropriate sentence.  That report is most useful to me when

18  it's accurate and when it's complete.  I tell you this because,

19  if you choose to speak to the probation office, I would ask you

20  to consider making sure that what you say to them is complete

21  and accurate.

22          Please also understand that you and your attorney and

23  the attorneys for the government will have the opportunity to

24  review the presentence investigation report before I see it.  I

25  invite you to look at it in case there is anything in it that

1    requires modification or correction or objection.

2            Do you understand, sir?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Ms. Noriega, may I please have a

5    sentencing date?

6            THE DEPUTY CLERK:  August 16th, at 3:00 p.m.

7            THE COURT:  Is that a date and time that works for the

8    government?

9            MS. DEININGER:  That works for the government.

10            THE COURT:  Is that a date and time that works for the

11    defense?

12            MR. RODRIGUEZ:  It does right now, your Honor.  Thank

13    you very much.

14            THE COURT:  Of course.  Thank you.

15            I'll ask the government, please, to transmit a factual

16    statement to the probation office in the next week or so.

17            And, Mr. Rodriguez, if you could reach out to the

18    probation office in the next two weeks or so --

19            MR. RODRIGUEZ:  That would be no problem, Judge.

20            THE COURT:  Thank you.

21            -- to set up the interview.  I appreciate that.

22            Let me also remind the parties or advise the parties

23    that I would like the defense submission two weeks in advance

24    of sentencing.

25            MR. RODRIGUEZ:  That would be no problem.

1          THE COURT:  Thank you.

2          And the government's --

3          MR. RODRIGUEZ:  Any objections and my memorandum in

4     support of my position will be done within at least two weeks

5     ahead of time so that you can have it and study it and review

6     it, and the government can review it, and hopefully agree or

7     disagree, and we can go forth without any problem.

8          THE COURT:  I appreciate that, sir, and I thank you

9     very much.

10         And I will ask the government to give me its

11    responsive sentencing submission one week in advance of

12    sentencing.  I do want to have an opportunity to really take

13    some time with these submissions.

14         Ms. Deininger, is it the position of the parties that

15    there is no need for modification of Mr. Cabrera Da Corte's

16    bail conditions?

17         MS. DEININGER:  That's correct, your Honor.  We can

18    leave the current conditions in place.

19         THE COURT:  I thank you.

20         Mr. Rodriguez, I'm going to address your client

21    directly again with your permission, which I know I have.

22    Thank you.

23         Mr. Cabrera Da Corte, based on my conversations with

24    the government, I have two further pieces of advice for you.

25         One is that you are still bound by your pretrial

1    release conditions, your bail conditions.  So I don't want you

2    to think that because you've pleaded guilty, they no longer

3    come into play.  They are actually the one thing keeping you

4    from being remanded, so please continue to comply with them.

5            Please also understand that I have set a sentencing

6    date in August, and for that date, and for any other date that

7    I order you to appear, you do have to appear in court or

8    virtually as I order.  If you don't appear, you could be

9    prosecuted for a separate offense commonly known as bail

10   jumping.

11           So may I confirm with you, sir, that you will continue

12   to comply with your bail conditions?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  May I also confirm with you, sir, that you

15   will appear when I order you to appear for a proceeding?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  I appreciate that.  Thank you.

18           Ms. Deininger, anything else for me to address from

19   the government's perspective today?

20           MS. DEININGER:  No, your Honor.

21           THE COURT:  Thank you.

22           Mr. Rodriguez, anything else to address today?

23           MR. RODRIGUEZ:  No, your Honor.  It's been a pleasure.

24   Thank you very much.

25           THE COURT:  For me as well.

1          I thank you all very much.  We're adjourned.

2          (Adjourned)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25